UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARMEN RAMIREZ,

          Plaintiff,

    v.

NANCY A. BERRYHILL,

          Defendant.

Case No. 17-cv-03498-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 17

## INTRODUCTION

Plaintiff Carmen Ramirez brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Mot., Dkt. No. 16; Opp'n, Dkt. No. 17. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record (AR), and the relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's motion and **DENIES** Defendant's cross-motion for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On April 17, 2013, Plaintiff filed a claim for Supplemental Security Income (Title XVI); on May 14, 2013, she filed a claim for Disability Insurance Benefits (Title II). Plaintiff alleged disability beginning on April 19, 2012 based on bilateral knee, degenerative joint disease, and mood disorder. On October 23, 2013, the Social Security Administration (SSA) denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. Plaintiff subsequently filed a request for reconsideration, which was denied on February 20, 2014. Plaintiff requested a hearing

before an Administrative Law Judge (ALJ).  ALJ Mary Parnow conducted a hearing on August 6, 2015.  Plaintiff testified in person at the hearing and was represented by counsel, Amy Orgain.

On October 23, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  AR 20-30.

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity" (SGA), which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined that Plaintiff had not performed SGA since April 19, 2012.  AR 22.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe impairments: bilateral knee arthritis; degenerative joint disease of the right shoulder; degenerative disc disease of the lumbar spine; calcaneal spurring of the left heel; degenerative joint disease of the right thumb; diabetes mellitus; hypertension; and obesity.  AR 22.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the Listing for Section 1.04 (disorders of the spine) nor for Section 1.02 (major dysfunction of joint(s)). AR 23; Listing of Impairments.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity (RFC). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work, with an ability to lift and/or carry ten pounds occasionally and less than ten pounds frequently; can stand and/or walk for two hours in an eight-hour workday; can sit for six hours in an eight-hour workday; would need to use a cane for all standing and walking; would need to be able to stretch briefly in place when seated; cannot climb ladders, ropes and scaffolds; can frequently climb ramps and stairs; can frequently balance; can perform unlimited stooping; and is limited to frequent handling and fingering. AR 25; *see also* AR 61-62.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could perform past relevant work as a tax preparer. AR 29.

In light of this finding, the ALJ did not proceed to the fifth step of the evaluation.

The ALJ's decision became final when the Appeals Council declined to review it on April 17, 2017. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On January 16, 2018, Plaintiff filed the present Motion for Summary Judgment. On February 13, 2018, Defendant filed a Cross-Motion for Summary Judgment. Plaintiff filed a Reply on February 25, 2018. *See* Reply, Dkt. No. 18.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). In other words, a court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

Plaintiff argues the ALJ erred in five material ways. First, the ALJ erred in finding her

depression was a non-severe impairment. Second, the ALJ erred in finding Plaintiff did not meet or equal a Listing. Third, the ALJ erred in evaluating the medical opinions of Plaintiff's treating physician and those of the non-examining medical consultants. Fourth, the ALJ erred in evaluating Plaintiff's credibility. And finally, the ALJ erred in finding Plaintiff could perform her past work as a tax-preparer. Defendant opposes each argument. The Court analyzes each issue below.

**A.      Depression as a Severe Impairment**

      1.      Medical Evidence of Record

            *a. Willow Adult Clinic (passim)*

In November 2007, Nurse Elizabeth Herrera noted that Plaintiff told her she was feeling depressed as a result of being unable to find a permanent job. AR 516. Plaintiff reported that suicide had crossed her mind in the past. *Id.* She indicated that she would like to speak to someone about her mental health. *Id.* Nurse Herrera referred Plaintiff to Mental Health with Elizabeth Alvarez. *Id.*; *see also* AR 512-13 (noting during follow-up visit in December 2007 that a message was left with Elizabeth Alvarez).

In March 2012, Dr. Calvin Chen, M.D., noted that Plaintiff appeared at the clinic crying because of work-related stress. AR 629. Plaintiff related that she had a stressful caretaker job with very little time to herself; had very few days off in the past three years; and she often wakes up in the middle of the night. *Id.* Dr. Chen diagnosed Adjustment Reaction NOS and referred Plaintiff to psychiatry. AR 631.

            *b. La Clinica De La Raza (AR 666-750, 757-766)*

Dr. Vanessa Litman, M.D., was Plaintiff's primary care provider at La Clinica. She noted in August 2013 that Plaintiff was at the Clinic for a depression follow up. AR 672. She noted Plaintiff was still depressed in September 2013. AR 674.

A triage nurse at La Clinica noted Plaintiff was depressed in February 2014; Plaintiff had suicidal ideation but "tries to think positive thoughts." AR 684. Plaintiff was continued on Zoloft and referred to a social worker regarding her depression. *Id.* Plaintiff had a follow-up visit with Rosa Lutrario, MSW, ASW, Integrated Behavioral Health Clinician. AR 714. Plaintiff explained

that she was experiencing increased signs of depression; her stressors including her living situation and being denied SSI. *Id.* She had passive suicidal ideation several days per week but no intent or plan. *Id.* She feels hopeless daily and has trouble sleeping. *Id.* Plaintiff stated the onset of those symptoms was approximately three weeks earlier. *Id.* Clinician Lutrario noted that Plaintiff was not taking her prescription medications: she stopped taking them because she didn't think they were helping. *Id.* She was willing to resume taking her medication, but she wanted "linkage to therapy which may be able to support SSI appeal." AR 714. Clinician Lutrario provided a referral to Casa Del Sol.

Nurse Melissa Chalot noted during another March 2014 visit that Plaintiff's emotions were volatile and Plaintiff was tearful, but that she had discontinued Zoloft because it made her feel worse. AR 685. Nurse Chalot further noted that Plaintiff's chronic pain was "likely exacerbated by concurrent depression." *Id.*

Group Progress Notes from La Clinica indicate Plaintiff attended a Managing Chronic Pain Group based on her diagnosis of "Pain due to psychological condition" for at least seven sessions between September 11, 2014 and November 20, 2014. *See* AR 697-699, 707-708.

Plaintiff reported during a June 2015 appointment that she was going to a Casa Del Sol therapy group and enjoyed it. AR 758.

### c. Dr. Tania Shertock, Ph.D. (AR 648-651)

On August 24, 2013, Dr. Shertock performed psychological evaluation of Plaintiff on behalf of the Department of Social Services.

Dr. Shertock noted that Plaintiff reported she had begun to feel depressed due to her general conditions; she had gained a lot of weight and cannot exercise due to pain in her knees. She started seeking outpatient psychotherapy "last year" and has seen two social workers, Anna Cedar and Rosa Lutrario. She is on the waitlist to see a new therapist. She attempted to commit suicide due to feeling lonely and continues to have suicidal ideation.

Dr. Shertock found Plaintiff's mental status was essentially unremarkable. She opined that Plaintiff met the criteria for Mood Disorder Due to a General Medical Condition (Severe). She further opined that Plaintiff was mildly impaired in a number of work-related abilities. Finally,

she opined that Plaintiff's "ability to interact with the public, supervisors, and coworkers appears questionable." AR 651.

### d. Dr. Aliyeh Kohbod, Ph.D., M.S. (AR 657-665)

Dr. Kohbod evaluated Plaintiff over the course of several examinations performed between May 22, 2013 and October 13, 2013. Plaintiff was referred to Dr. Kohbod by an advocacy specialist with the Mental Health Association of Alameda County.

Dr. Kohbod administered six tests to collect psychological data. Based on the results of these tests and interviews with Plaintiff, Dr. Kohbod diagnosed Major Depressive Disorder, Severe. Dr. Kohbod found Plaintiff showed deficits in the areas of cognitive functioning including memory, attention, and concentration, and also was experiencing mood symptoms that were consistent with major depression. Furthermore, Dr. Kohbod opined Plaintiff met the criteria for the Major Depression Listing, and that her current depressive mood and memory difficulty would prevent her from engaging in her previous typical job related activities. "Due to her depression, she is not able to retain the level of social interaction expected and there is a possibility that she could forget critical elements of her employment." AR 665.

### 2. The ALJ Decision

The ALJ found Plaintiff's allegation of disabling depression was not supported by the record. AR 23. The ALJ noted the "sparse mental health treatment" Plaintiff had received at La Clinica, and the fact Plaintiff admitted she stopped taking her medication because she felt it was not working. The ALJ observed Plaintiff's mental health records only covered from July 2013 to February 2014, less than a 12-month period. AR 23.

The ALJ gave "great weight" to Dr. Shertock's findings of mild limitations because her opinion was well-supported by her evaluation, the medical records, and consistent with the dearth of medical treatment. AR 23. The ALJ gave "little weight" to Dr. Khobod's opinion "because he based his opinion on a one-time evaluation, and that assessment is not supported by any other objective findings or the whole course of medical treatment." AR 23.

The ALJ observed Plaintiff's ability to work for two months in 2015 as a tax preparer belied the conclusion she had cognitive deficits. AR 23.

The ALJ then examined the four functional Paragraph B criteria for evaluating mental disorders, and found the record supported no more than mild limitations in activities of daily living; social functioning; concentration, persistence or pace; and no episodes of decompensation of extended duration.  AR 23-24.  Based on these findings, the ALJ concluded Plaintiff's mental impairment was not severe.  AR 24.

        3.    <u>Arguments of the Parties</u>

Plaintiff argues the ALJ erred in failing to list her depression as a severe impairment at Step 2 of the sequential analysis.  *See* Mot. at 8-11.  She argues the reasons the ALJ used to reach the conclusion that her mental impairments had no more than a minimal effect on her ability to work are not based on substantial evidence.  She contends the mental health treatment she received was sufficient to pass the Step 2 de minimis screening, and that she cannot be faulted for failing to seek treatment.  She next contends the ALJ erred in giving great weight to the opinion of one examiner, and little weight to that of the other.  Finally, she contends records establish she exhibited depressive symptoms for well over a year.

Defendant responds that the ALJ's reasons were valid and based on substantial evidence in the record.  Opp'n at 4-6.  Defendant states it will discuss "in detail" "Plaintiff's argument that the ALJ improperly gave no weight to the opinions of Tania Shertock, Ph.D. and Aliyeh Kohbod, Ph.D." (Opp'n at 6), but the Court was unable to locate any such discussion.  *See* Opp'n.

        4.    <u>Analysis</u>

The ALJ's decision is not based on substantial evidence.

First, the ALJ erred in concluding that Plaintiff's mental health records were "sparse" and only covered from July 2013 to February 2014, less than a 12-month period.  As discussed above, Plaintiff's health records first mention depression and a request for referral to mental health services in 2007.  After 2007, the next records addressing Plaintiff's mental health date from March 2012, when she was diagnosed with Adjustment Reaction disorder and referred to psychiatry.  She started seeking outpatient psychotherapy in 2012.  She presented for a depression follow-up appointment in August 2013 and was on a waitlist to see a new therapist.  She continued to attend follow-up visits for depression in February 2014 but stopped taking her medication

because she did not think it was helping; she agreed to resume taking medication and was continued on Zoloft in March 2014. She attended group therapy in 2014 based on a diagnosis of "pain due to psychological condition", and reported enjoying group therapy in June 2015. This is sufficient evidence of treatment to meet the de minimis requirement at Step 2. While lack of treatment can be a legitimate consideration in determining the severity of impairment (*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)), the evidence listed above demonstrates that Plaintiff did seek and obtain treatment, if not as early as 2007, then at the very least between March 2012 and June 2015 – three times longer than the ALJ noted.[2] Moreover, even if the ALJ would have preferred to see additional or different types of treatment, "[i]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)); *see also Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[a] claimant may not be faulted for failing to seek treatment, particularly where the claimant suffers from mental illness.").

Second, to the extent the ALJ gave greater weight to the opinion of Dr. Shertock and less weight to the opinion of Dr. Khobod because Dr. Shertock's opinion was more consistent with the lack of treatment, for the reasons stated above, the ALJ erred in doing so.

Third, contrary to the ALJ's finding that there was no evidence that Plaintiff's mental health impairment caused any limitations that were more than mild, that evidence exists in the record. The ALJ failed to acknowledge Dr. Shertock's opinion that Plaintiff's ability to interact with the public, supervisors, and coworkers "appears questionable" (AR 651). This opinion is consistent with Dr. Kohbod's assessment that Plaintiff's attitude can cause conflict and "can often lead her to alienating others." AR 663; *see also* AR 665 (explaining that Plaintiff cannot perform her past work as a home care worker because "she is not able to retain the level of social interaction expected and there is a possibility that she could forget critical elements of her employment"). Similarly, the ALJ discounted Dr. Khobod's opinion regarding Plaintiff's severe

United States District Court
Northern District of California

---

[2] Plaintiff was insured through December 31, 2014. AR 20.

memory and concentration deficits because that "opinion is not corroborated by any other objective findings or medical treatment and it is inconsistent with the claimant's reported ability to work as a tax preparer even if only for 2 months." AR 24. Dr. Khobod's opinion of Plaintiff's memory deficits is based on several objective tests performed during her examination, and explains that it is only one aspect of Plaintiff's memory that is impaired: "The extreme of this result may be due to the fact that this subtest demands a certain degree of cognitive flexibility . . . switching between functions appears to be difficult for Ms. Ramirez and this deficit was also seen on the Trail Making Test. While memory was deemed in the average range on the Digit Span subtest, on the WRAML she scored in the borderline category." AR 660; *see also* AR 662 (discussing low scores in attention/concentration and providing further explanation for those scores). Dr. Shertock did not administer any tests during her evaluation of Plaintiff; her opinion was based strictly on her observation of Plaintiff, her review of the records, and her clinical interview. There thus exists no objective evidence to dispute Dr. Khobod's very specific opinion about what testing revealed regarding certain aspects of Plaintiff's memory and concentration. The ALJ does not explain what medical treatment she expects to see to treat memory deficits.

Finally, Plaintiff's failed attempt to resume working as a tax preparer is not substantial evidence for the ALJ's conclusion that Plaintiff suffers no cognitive impairments. Plaintiff did not "testif[y] that she was able to work for 2 months this year as a tax preparer." AR 28. There is no evidence that Plaintiff worked for two months: she testified that she worked for "less than two months" before the owner of the service "told [her] not to work because [she] was in pain and [she] couldn't concentrate." AR 52. There also is no evidence that Plaintiff worked effectively during this period. *See id.*; *see also* AR 53 ("I went in, in January and I took the classes for two weeks, and then I got the license and then I started working and then in March, I didn't work anymore because I couldn't. He told me to go to the doctor that I couldn't do the job."). Nor is there evidence that Plaintiff worked regular 8-hour days during this period.[3]

---

[3] When Plaintiff worked as a tax preparer in earlier years, she worked between 4 and 6 hours a day when the company was at its busiest; if it was not busy, she was told to go home. AR 58.

5.    Summary

The reasons the ALJ articulated for finding that Plaintiff's diagnosed mental health impairments were not severe at Step 2 of the sequential analysis were not supported by substantial evidence.

**B.    Evaluating Medical Opinions**

1.    Legal Standard

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an opinion of a treating physician should be favored over that of a non-treating physician. *Id.* at 830-31. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The opinion of an examining physician generally is entitled to greater weight than the opinion of a non-examining physician, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008), and the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician, *Lester*, 81 F.3d at 83; *Buck v. Berryhill*, 869 F.3d 1040, 1049-50 (9th Cir. 2017) (applying *Lester* and finding it was error for ALJ to reject opinion of examining physician based on opinion of non-examining expert, especially when opinion of non-examining expert is contradicted by other source); *see also* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.").

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (internal quotation marks and citation omitted). "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than offer [] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted). An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another. *See Nguyen*, 100 F.3d at 1464. In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion. *See id.* Generally, the SSA will give greater weight to an opinion that is more consistent with the record as a whole. 20 C.F.R. § 416.927(c)(4).

> ### 2. Dr. Vanessa Litman, M.D.

Plaintiff received regular treatment from Willow Clinic's Dr. Chen from 2003 to 2012. AR 630. She changed primary care physicians and began receiving regular treatment from La Clinica's Dr. Litman in May 2013. AR 666-67. Plaintiff continued under Dr. Litman's care through the date of the ALJ's decision. AR 758-59.

In June 2015, Dr. Litman submitted to the SSA a Medical Opinion Regarding Plaintiff's Ability To Do Work-Related Activities (Physical). *See* AR 752-55. By the time she provided her Medical Opinion letter to the SSA, Dr. Litman had been Plaintiff's primary care physician for more than two years. Dr. Litman completed treatment notes, prescribed medication, and referred Plaintiff to specialists throughout this time, including an orthopedist and a podiatrist, and ordered bilateral knee and lumbar spine x-rays. *See* AR 666-750. Her treatment notes include numerous references to Plaintiff's pain in her back and both knees, as well as efforts to control her pain. *See* AR 667, 668-69, 670, 672-73, 674-75, 684, 685, 689-90, 693-94, 695, 700, 704, 712, 716, 721-22, 731.

In her Medical Opinion letter, Dr. Litman opined that Plaintiff could lift and carry less than 10 pounds on an occasional or frequent basis; could stand and walk for less than 2 hours per work

day; could sit for about 2 hours per work day; if sitting, would need to change positions every 30 minutes; if standing, would need to change positions every 15 minutes; must walk around every 15 minutes for 5 minutes; needs to be able to shift at will from sitting to standing and walking; needs to lie down at unpredictable intervals during a shift; walks slowly with a cane, is slow to rise from a chair; has crepitus in her knees; has some stiffness and pain with weight bearing; and has some postural, manipulative, and environmental limitations. AR 752-54.  Dr. Litman explained: "She needs to use a cane and often walks with a shopping cart to offset knee pain.  Her balance is poor due to knee pain."  AR 754.  Finally, Dr. Litman opined Plaintiff would be absent from work more than 3 times a month due to her impairments, and that her impairments would interfere with her concentration approximately 50% of the time.  AR 755.

The ALJ gave "little weight" to Dr. Litman's opinion because it was not consistent with the mild to moderate objective findings of record, the course of medical treatment, including the limited treatment for low back pain, the claimant's reported ability to work as a tax preparer for the 2015 tax season, and Plaintiff's ADLs.  AR 29.  On this record, none of these reasons is a clear and convincing reason to reject Dr. Litman's Medical Opinion.

### a. Consistent with Objective Findings of Record

The ALJ found that the "objective findings show that the claimant has mild to moderate bilateral knee degenerative changes only."  AR 26.  The ALJ referred to May 2012 x-rays showing increased bilateral medial compartment degenerative joint disease, mild to moderate left patellofemoral degenerative joint disease, and small dense calcifications adjacent to the lateral margin of the right patella.  AR 26.  A September 2013 x-ray showed similar mild degenerative changes.  *Id.*  An April 2014 x-ray showed moderately narrowed medial compartment with small marginal osteophytes, and mild to moderate posterior patellar osteophytic spurring.  *Id.* (citing Ex. 14F/41).  Thus, the 2014 x-rays suggest a progression of the arthritic changes in Plaintiff's knees.  Importantly, the SSA medical consultants who reviewed Plaintiff's medical records and on whose opinion the ALJ placed great weight, did not review the April 2014 x-rays, nor opine about the potential impact that level of degeneration might have on Plaintiff given the exacerbating factor of her obesity, which also increased during this period.  *See infra.*  They only had access to the x-rays

United States District Court
Northern District of California

showing mild degenerative changes. Dr. Litman was the only medical professional, whether treating, examining, or non-examining, who rendered an opinion about the impact of Plaintiff's bilateral knee impairments on her ability to work after reviewing the April 2014 x-rays. There is no substantial evidence in this record that the moderate degenerative changes Plaintiff evidenced in April 2014 are not consistent with the level of impairment Dr. Litman identified. This was not a clear and convincing reason for rejecting Dr. Litman's opinions.

### b. Consistency with Course of Treatment

In addition to attending a weekly pain group and pursuing talk therapy, Plaintiff received injections for her pain and took oral medications, including Losartan, Tramadol, Hydrocodone, and Gabapentin; she stopped taking injections because the relief they provided was of short duration and she wanted to see results. *See* AR, 54-55, 667, 673, 689, 695, 763. In May 2014, Dr. Litman referred Plaintiff for an orthopedic consult for "chronic pain/difficult to control [degenerative joint disease]." AR 735. The orthopedist denied the referral, noting Plaintiff "needs chronic pain management." AR 735. Dr. Litman therefore referred Plaintiff to a pain management specialist, Dr. Francis Tse, who recommended that Plaintiff instead be referred to a podiatrist and an orthopedist. AR 726, 728. Because Plaintiff's lower back pain was not symptomatic at the time of her visit, Dr. Tse found steroid injections were not currently recommended. AR 728. Dr. Litman then apparently re-referred Plaintiff for an orthopedic consultation for her knees, and that orthopedist opined Plaintiff was not a surgical candidate. AR 673.

The record reflects an ongoing effort by Plaintiff's primary care physician to manage Plaintiff's pain with medication, injections, and therapy, and to refer Plaintiff to specialists who might help her. The ALJ did not develop the record to determine why Plaintiff was not a surgical candidate, nor did she identify the type of treatment the ALJ would find consistent with Dr. Litman's medical opinion based on her years of treating Plaintiff. That Plaintiff did not pursue some unidentified form of treatment for her condition is not, without more, a clear and convincing reason to discount Dr. Litman's opinion given Dr. Litman's efforts to address the source of Plaintiff's pain and treat her.

### c. Ability to Work as Tax Preparer

For the reasons stated above, the Court finds the ALJ's conclusion that Plaintiff worked as a preparer for the 2015 tax season is not based on substantial evidence. Plaintiff attempted to work as a tax preparer for less than two months; she testified her employer told her to leave in March 2015 because she was in pain and could not concentrate. The ALJ did not specifically reject this testimony or find it not credible. *See Lester*, 81 F.3d at 834 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). This also was not a clear and convincing reason to discount Dr. Litman's opinion.

### d. Plaintiff's ADLs

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *See Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

As ADLs, the ALJ identified Plaintiff's testimony that she takes a class on Mondays at the Senior Center in Emeryville; she attends a mental health group or a class at the Latino Community Center in Hayward on Tuesdays; she does her laundry or visits a friend in Hayward on Wednesdays; she attends depression groups on Fridays at La Clinica in Hayward; she goes grocery shopping once a week or so, using a shopping cart to walk around the store; and she is able to complete her chores, laundry, and grocery shopping without assistance. AR 26, 28, 56-57. Plaintiff is able to drive her car. AR 296, 305.

The ALJ does not explain how these activities are inconsistent with the limitations identified by Dr. Litman. It is not apparent that they are in any way. Given the record in this matter, the Court finds that Plaintiff's limited ADLs of leaving the house once a day and accomplishing household tasks without assistance, do not constitute a clear and convincing reason for rejecting Dr. Litman's opinion.

### 3. SSA Consultants

SSA physical medicine consultants, Drs. Joan L. Bradus and J. Joaquin, reviewed Plaintiff's medical records through the date of their February 2014 evaluation. AR 108-22. They

gave great weight to the opinions of Dr. Rose Lewis, M.D., because her opinions were consistent with objective findings.  AR 118.

Dr. Lewis evaluated Plaintiff on August 26, 2013.  AR 643-646.  She only reviewed medical records from San Mateo Medical Center that had been provided as of the date of the examination.  AR 643.  As is relevant here, Dr. Lewis noted tenderness to palpation on both knee joints, swollen left knee, and tenderness to palpation on the left ankle.  AR 645.  She found Plaintiff was unable to kneel, squat, or do tandem or toe-heel walk because of pain; used a cane at all times which was medically necessary and prescribed for her; and limped slightly when walking unassisted.  AR 644.  She diagnosed extensive degenerative arthritis.  AR 645.  Dr. Lewis opined that Plaintiff can stand and walk up to 4 hours per day "because of the need to use a cane, decreased range of motion of the knees, degenerative arthritis in the knees . . . decreased balance and morbid obesity."  *Id.*  She further opined Plaintiff "can sit without limitations."  *Id.*

Despite giving great weight to Dr. Lewis' opinion, the SSA consultants concluded Plaintiff could sit for only 6 hours in an 8-hour day and needed to be able to stretch briefly in place for comfort as needed; could walk only 2 hours in an 8 hour day and required a hand-held assistive device for ambulation.  AR 119.

The ALJ gave "great weight" to the opinions of the SSA consultants, to the extent their opinions were consistent with her decision.  AR 28-29 (citing Ex. 6A/11-12).  The RFC the ALJ applied in this case repeats their suggested limitations verbatim.  AR 25.

The non-examining SSA consultants reviewed Plaintiff's records from La Clinica through September 2013.  *See* AR 116.  They thus did not have access to Dr. Litman's notes after that date; this includes all of Exhibit 14F (AR 677-750), which includes treatment notes from March 2014 through February 2015.  Dr. Litman's records from that period continue to document Plaintiff's pain in multiple sites due to sciatica, degenerative joint disease, and plantar fasciitis; the treatment prescribed for that pain, including injections, oral medication, referrals to pain management specialists and pain management group therapy; referrals to orthopedic and podiatry consultations; x-rays documenting moderate abnormalities in both knees; and the impact of Plaintiff's pain on her ability to walk and her ADLs.  Throughout this period, Plaintiff also was

gaining weight, which exacerbated her conditions and her pain.

It generally was not error for the ALJ to give great weight to the opinions of the SSA consultants. But the SSA consultants did not have access to the last year of Dr. Litman's treatment notes, the March 2014 x-rays that document the progression of Plaintiff's knee degeneration from mild to moderate, or the reports of her increasing weight-gain and her doctor's opinion her weight gain exacerbated the impact of her condition. To the extent the ALJ relied on the SSA consultants' opinions to discount these later-acquired records or Dr. Litman's opinions based on those records, there was no substantial evidence for doing so and the ALJ erred in doing so. *See also Lester*, 81 F.3d at 83; *Buck*, 869 F.3d at 1049-50.

## C.     Did Plaintiff's Physical Condition Meet or Equal a Listing

Plaintiff argues the ALJ erred in failing to consider whether her bilateral knee arthritis met or equaled Listing 1.02 at Step 3 of the Sequential Evaluation Analysis. Listing 1.02 defines Major Dysfunction of a Joint (due to any cause), as being:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

The ALJ's entire analysis at Step 3 consists of the following:

> The medical evidence does not document findings that meet or approach the criteria set forth in Section 1.04 for a degenerative disc disease. There is no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as contemplated by Section 1.04.
>
> Additionally, the claimant left heel, right shoulder and right thumb conditions are not of Listing level in severity. There is no evidence of gross anatomical deformity, nor any objective medical findings of

joint space narrowing, bony destruction, or anklylosis of the level severity contemplated by Section 1.02.

AR 25. Plaintiff is correct that the ALJ does not address Plaintiff's knee arthritis. This was error, as there is objective evidence of major dysfunction in both knees: a September 2013 x-ray shows joint space narrowing in her right knee (AR 654-55), and an April 2014 x-ray shows moderate medial compartment narrowing in both knees, mild to moderate spurring, and subcortical sclerosis (AR 717). Plaintiff has been diagnosed with degenerative joint disease in her knees, chronic joint pain, and instability. AR 667-70, 672-75, 684-85, 689-90, 693-95, 759. Moreover, Plaintiff's testimony and medical records provide evidence that she cannot ambulate effectively and uses a cane, which was prescribed; a shopping cart; or a walker, which was prescribed in June 2015 for "severe pain and functional limitations due to [degenerative joint disease]." AR 54, 59, 689, 754, 758-59; *see also* AR 309 (Third Party Function Report: Plaintiff needs to use a cane all the time, and sometimes she uses a shopping cart). Assuming arguendo that the omission is merely a typographical error and that the ALJ meant to include "bilateral knee arthritis" in the second paragraph of her analysis, the ALJ still fails to explain why the joint space narrowing evidenced in Plaintiff's x-rays does not rise to the level of severity contemplated by Section 1.02. As previously noted, the SSA consultants who reviewed Plaintiff's records did not review the April 2014 x-rays showing the moderate degenerative changes to Plaintiff's knees.

Defendant in effect argues the ALJ's failure to consider whether she met or equaled Listing 1.02 is harmless because Plaintiff could ambulate effectively. Opp'n at 6-8. The SSA defines "effective ambulation" as

> (1) . . . an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use

standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

App'x 1 to Subpart P of Part 404.  As evidence of effective ambulation, Defendant identifies Plaintiff's statement that she had a cane but preferred not to use it, and the facts that she traveled by car, was able to take public transportation, could carry out activities of daily living, attended classes, went to meetings, visited friends, and did not have help or assistance in performing household chores.  Opp'n at 8.

Setting aside the fact the ALJ did not analyze whether Plaintiff could "effectively ambulate" as defined above, the evidence the ALJ did discuss is not substantial evidence that Plaintiff could do so.  In April 2014, Plaintiff reported to her treating physician that she "occasionally uses shopping cart (at store) to help walk and has cane but prefers not to use it."  AR 689.  At her hearing before the ALJ, Plaintiff testified that she keeps her cane in her car, but that when she goes out, her friends bring her a shopping cart and she just walks with the shopping cart around the stores all the time.  AR 56.  If she does not use the shopping cart, she just walks slowly; her friends have to help her up and down the stairs, because she cannot do that.  AR 56.  The ALJ interpreted Plaintiff's April 2014 "that [she] had a cane, but preferred not to use it, and that she only occasionally used a shopping cart to help walk at the store" to contradict her August 2015 testimony.  AR 28.[4]  The ALJ does not acknowledge that by August 2015, Plaintiff's pain had increased to the point that she attended a pain management group and her treating physician had prescribed her a walker.  *See* AR 694 (August 2014 note from Dr. Cecily Wait, M.D.: "Chronic pain: . . . Really does need to keep moving.  Arthritis + obesity will = more pain.  Patient understands.  Will try to keep moving."); AR 101 (at initial evaluation, SSA consultant Dr. Bradus noted on February 10, 2014 that "[claimant] has gained weight and has increased knee and back pain since 2012 application."); AR 758 (Plaintiff wants a walker; she has a cane but cannot walk

---

[4] The Court must defer to the ALJ's interpretation of this statement (*see supra* at 4), but notes that an alternative explanation of Plaintiff's April 2014 statement is that she prefers to use the shopping cart rather than the cane, and thus prefers not to use her cane when she has access to a shopping cart.

well; uses a shopping cart); AR 759 (will prescribe walker); AR 59 (testifying that she has used her walker a couple of times and can use it if she is just "walking places"; but since she is not supposed to use the walker up or down the stairs, she mostly uses the cane or the shopping cart); AR 54 (testifying that when she is at home and the pain is bad, it's hard to walk, so she just holds on to the walls).

The Court previously listed the ADLs the ALJ identified and relied upon. Defendant also argues Plaintiff uses public transportation (Opp'n at 8), but there is no evidence Plaintiff does (*cf.* AR 576 (Dr. Rana opines Plaintiff can use public transportation)). But once again, none of these activities constitutes substantial evidence that Plaintiff can "ambulate effectively" as defined by the SSA: there is no substantial evidence that she can accomplish these activities without using a cane, shopping cart, or walker; there is no substantial evidence she can use stairs without assistance, and she testified she cannot do so; there is no substantial evidence she can walk a block at a reasonable pace, on the contrary, she testified that if she must walk without her cane, she does so "slowly"; there is no substantial evidence she can walk on rough or uneven surfaces; and there is no evidence of the speed at which she performs her grocery shopping, when using a grocery cart for balance. Defendant cites *Stimson v. Colvin*, 194 F. Supp. 3d 986, 999-1000 (N.D. Cal. 2016), for the proposition that the need for a cane does not necessitate a finding of inability to ambulate. *See* Opp'n at 7. But in *Stimson*, the evidence established the claimant "often takes walks and is able to independently shop for groceries and that he is able to use public transportation." 194 F. Supp. 3d at 1000; *see also id.* at 992-93 ("Stimson testified that he could sit for about 30 minutes at a time, stand for about one to two hours, and walk for about 30 minutes at a time. When the ALJ asked about his daily routine, Stimson explained that he 'take[s] care of anything personal that needs to be tidied up around the house,' that he 'take[s] a walk if the weather lets [him] outside,' that he occasionally cooks and cleans the kitchen, that he does laundry once a week, and that he does grocery shopping from a store two blocks away and 'get[s] small amounts of things at a time.'"). The claimant in *Stimson* did not argue that with the use of his cane, he was "otherwise unable to effectively ambulate." *Id.* at 1000. Plaintiff here does so argue. Moreover, her testimony, and the other evidence of record here, is materially different that the facts in *Stimson*.

20

There is no evidence Plaintiff can walk for 30 minutes at a time, often takes walks, or takes public transportation.

Finally, the ALJ identifies the fact Plaintiff worked for two months as a tax preparer in 2015. AR 28. She writes that Plaintiff stopped working in April, "which is the end of the tax season, and she looked for other work, but that no one would hire her." AR 28. There is no evidence supporting that statement: Plaintiff testified she stopped working in March 2015, not April. *See* AR 52-53. She testified she stopped working in March because the owner of the service told her in March not to work because she was in pain and could not concentrate. *Id.* Plaintiff testified that she looked for a job after she stopped providing personal care attendant services in 2012, but could not find other work. AR 53, 57-58. But she did not testify that she looked for other work after she left the tax preparation office in March 2015. *See id.*

The ALJ's failure to analyze whether Plaintiff's diagnosed degenerative knee impairment met or equaled the Listing for Section 1.02 was error. This error was not harmless because the record does not establish that Plaintiff could ambulate effectively as defined by the SSA.

**D.    Evaluating Plaintiff's Credibility**

Plaintiff has been diagnosed with severe arthritis, degenerative joint disease, chronic joint pain, stiffness, and instability; the management of her pain is the focus of numerous medical visits; she attends a pain management group and takes pain medication (including cortisone and lidocaine injections). AR 667-70, 672-75, 684-85, 689-90, 693-95. No treating physician has suggested Plaintiff is malingering or exaggerating her symptoms. Moreover, as the ALJ recognized, Plaintiff's extreme obesity contributes to her symptoms. AR 28. The ALJ nonetheless found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." AR 26.

1.    Applicable Standard

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007; *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036. Here, the ALJ found the objective medical evidence could reasonably be expected to produce the pain or other symptoms alleged, and did not identify any evidence of malingering. *See* AR 26. The ALJ thus was required to offer clear and convincing reasons for finding Plaintiff not entirely credible.

2.   Analysis

As a preliminary matter, the ALJ erred when she did not specifically reject any portion of Plaintiff's testimony. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."). The portions of the testimony the ALJ cites are corroborated by other parts of the record (*see* AR 26 (Plaintiff testified she has pain in her foot and in both knees; she uses a cane to walk; if she does not have a cane, she walks slowly; she uses Glucosamine and Gabapanetin, but her medications do not help much, she is kept awake by her pain, she is sometimes depressed, etc.)), and the ALJ did not identify those portions of Plaintiff's testimony she found not credible.

Furthermore, the reasons articulated by the ALJ are not clear and convincing reasons for discrediting Plaintiff's credibility. The ALJ identified the following reasons she found Plaintiff's unspecified statements "not entirely credible": allegations of disabling physical impairments were only partially corroborated by the medical records, which only showed mild to moderate impairments; the record showed only conservative and intermittent treatment; the consultative

examiners opined Plaintiff did not have significant limitations; in 2014, Plaintiff stated she preferred not to use her cane; she worked as a tax preparer in 2015; and her ADLs are "consistent with a finding that the claimant retains the ability to perform a range of sedentary work." AR 28.

With the exception of Plaintiff's ADLs being consistent with the ability to perform the full range of sedentary work, the Court already addressed why the other reasons articulated by the ALJ were not supported by substantial evidence; thus, they also do not provide clear and convincing reasons for discrediting unspecified portions of Plaintiff's testimony or statements. The Court will not repeat its analysis here, but does add that a failed work attempt is not a sufficient basis for an adverse credibility finding. *See Lingenfelter*, 504 F.3d at 1036-37 ("[Claimant,] facing difficult economic circumstances, tried to work for nine weeks and, because of his impairments, failed[. This] is not a clear and convincing reason for concluding that his symptoms could not have precluded him from maintaining employment during the relevant time period.")

With respect to Plaintiff's ADLs, the Court finds these do not constitute a clear and convincing reason for discrediting her pain testimony. Plaintiff is able to travel to another location to attend a weekly pain management, a weekly appointment, and a weekly visit with a friend; she does laundry once a week and shops once a week. She thus is not bed bound or utterly incapacitated. But "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). ALJs relying upon a claimant's activities of daily living must "be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). An "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1111 (internal quotation marks and citations omitted). But here, the ALJ neither attempted to analyze whether Plaintiff's ADLs were inconsistent with her reported pain, nor whether they were transferable to a work setting.

To summarize, none of the reasons the ALJ articulated for discounting Plaintiff's

23

credibility are clear and convincing, and the ALJ erred in doing so.

**E.     Performing Past Relevant Work**

Plaintiff argues the ALJ erred in finding she had past relevant work as a tax preparer because the record shows she never performed this position sufficiently to qualify as substantial gainful activity.  Defendant responds that SSA regulations require that a claimant's earnings from a seasonal or part-time position be averaged over the period the claimant actually performed the work.  Opp'n at 14 (citing *Argueta v. Berryhill*, 703 F. App'x 460 (9th Cir. Nov. 20, 2017) ("Argueta's earnings record shows that she was paid more than the $1,000–per-month threshold for substantial gainful activity for 2010 when averaged over the five months that she worked. See 20 C.F.R. § 404.1574(b)(2) (explaining calculation of threshold); Social Security Ruling 83–85 (explaining that earnings from seasonal work are averaged over the actual period of work involved)").  Plaintiff agrees this is the correct formula.  Reply at 9.  Applying this formula to Plaintiff's time working as a tax preparer, Defendant argues the ALJ properly used tax preparer as relevant past work for Plaintiff.  Plaintiff responds that Defendant's math is wrong: her averaged earnings for the period in which she worked (or attempted to work) as a tax preparer fall below the 2009 $980.00 monthly threshold for substantial gainful activity.  *See id*.

In 2009, Plaintiff earned a total of $3,583.41 as a tax preparer.  AR 232.  Plaintiff testified she worked "just the tax season," which lasted "from February to April 15th or April 16th."  AR 58.  There is no evidence to support Plaintiff's contention that the tax season over which she worked was four months long.  Reply at 9.  Therefore, averaging the $3,583.41 Plaintiff earned over 2.5 months, Plaintiff earned $1,433.36 per month.  This is well above the 2009 $980 threshold and was properly considered past relevant work by the ALJ.

## CONCLUSION

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits."  *Smolen*, 80 F.3d at 1292.  Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Moreover, "[r]emand for further

proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits).

The Court concludes this case should be remanded for further administrative proceedings in accordance with this Order. Specifically, the ALJ must (1) reevaluate whether Plaintiff's depression is a severe impairment; (2) reassess the weight given to Dr. Litman's opinion; (3) evaluate whether Plaintiff's bilateral knee arthritis, alone or in combination with her obesity, meets or equals the Listing for Section 1.02; and (4) reassess her evaluation of Plaintiff's credibility. The ALJ may need to develop the record to do so.

For these reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: April 19, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge